IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 5:13-CV-174 (CAR) |
| CARMEN D. TREVITT, JR., | : | |
| BARBARA B. TREVITT, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| BRANCH BANKING AND TRUST | : | |
| COMPANY, | : | |
| | : | |
| Cross-Claimant, | : | |
| | : | |
| v. | : | |
| | : | |
| CARMEN D. TREVITT, JR. and | : | |
| BARBARA B. TREVITT, | : | |
| | : | |
| Cross-Defendants. | : | |
| _____ | : | |

## ORDER ON MOTIONS

This case is currently before the Court on Carmen and Barbara Trevitt's Motion

to Strike Branch Banking and Trust Company's Crossclaim [Doc. 46], "Objection to

United States of America's Application for Entry of Default" [Doc. 41], Motion to Allow

an Amended Answer and Change the Title of Pleadings [Doc. 61], and Motions for a

Hearing [Docs. 65 & 66] as well as the Government's and Branch Banking and Trust Company's Motions for Default Judgment [Docs. 48 & 49].

## FACTUAL AND PROCEDURAL HISTORY

The Government filed the present action to reduce the federal income tax liabilities of Carmen and Barbara Trevitt (collectively, the "Trevitts") to judgment and to foreclose federal tax liens against certain real property in which all Defendants claim an interest. After service of the Amended Complaint, the Trevitts, proceeding *pro se*, filed personal Affidavits averring that their signatures do not appear on Internal Revenue Service Form 870.[1] Thereafter, the Trevitts filed two additional documents each titled as a "Counterclaim" against the Government on July 23, 2013.[2] Branch Banking and Trust Company ("BB&T) was also named as a Defendant, and, on September 27, 2014, BB&T filed an Answer and raised a Crossclaim against the Trevitts for indemnification pursuant to the provisions of a security deed.[3] The Trevitts did not respond to BB&T's Crossclaim.

Upon the Government's Motion, the Court dismissed the Trevitts' Counterclaims for lack of subject matter jurisdiction.[4] Thereafter, the Court held a discovery hearing on March 13, 2014, at which the Court discussed the litigation process with the Trevitts

---

[1] [Docs. 7 & 8].
[2] [Docs. 9 & 10].
[3] [Doc. 23].
[4] [Doc. 33].

2

and, given the complexity of this case, encouraged the Trevitts to retain counsel.  All parties attended and participated in the hearing.

Shortly after the hearing, BB&T and the Government moved for entry of default against the Trevitts on the grounds that the Trevitts failed to file responsive pleadings to the Government's Amended Complaint and BB&T's Crossclaim.[5]  The Clerk of Court entered default in favor of the Government and BB&T on March 20, 2014.

In response to the Clerk's Entries of Default, the Trevitts filed (1) an "Objection to United States of America's Application for Entry of Default"[6] and (2) a Motion to Strike BB&T's Crossclaim.[7]  Soon thereafter, both the Government and BB&T moved for default judgment against the Trevitts.[8]  The Trevitts opposed both Motions[9] and later retained counsel to represent them in this proceeding.  On behalf of the Trevitts, counsel filed a Motion to Allow an Amended Answer and Change the Title of Pleadings as well as Motions for a Hearing to discuss the merits of the pending Motions.[10]   The Government opposes all of these requests.

---

[5] [Docs. 37 & 40].

[6] [Doc. 41].

[7] [Doc. 46].

[8] [Docs. 48 & 49].

[9] [Docs. 50 & 53].  Without much explanation, the Trevitts withdrew their brief in opposition to the Government's Motion for Default Judgment. [Doc. 57]. Nevertheless, their withdrawal of this brief is not dispositive of the Court's analysis in this Order.

[10] [Docs. 61, 65, 66].

**DISCUSSION**

As a preliminary matter, the Court notes that the parties have fully briefed the Motions and the relevant issues, and, as such, a hearing is unnecessary.  Accordingly, the Trevitts' Motions for a Hearing are **DENIED**.  The Court will now turn to the pending substantive Motions.

**I.     The Trevitts' Motion to Strike BB&T's Crossclaim and BB&T's Motion for Default Judgment**

In response to the Clerk's entry of default in favor of BB&T, the Trevitts filed a Motion to Strike the Crossclaim, arguing that BB&T's Crossclaim should be struck from the record for two reasons.  First, the Crossclaim was not properly captioned as a separate pleading in violation of Federal Rule of Civil Procedure 10(a); instead, it was "deceptively hidden" on the tenth page of BB&T's Answer.  Second, the Trevitts argue that the Crossclaim was not properly served on them.[11]

Neither argument, however, warrants striking the Crossclaim.  The Federal Rules of Civil Procedure do not require that a crossclaim be captioned as a separate pleading.[12]  The Federal Rules simply require that "a pleading . . . state as a crossclaim

---

[11] The Trevitts raise the same arguments opposing BB&T's Motion for Default Judgment.

[12] Rule 10 referenced by the Trevitts states that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation." Fed. R. Civ. P. 10(a).  A crossclaim is not technically a separate "pleading" within the meaning of the Federal Rules. *See* Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a

any claim by one party against a coparty."[13]   Here, BB&T's response was properly captioned as its "Answer, Affirmative Defenses, and Cross-Claim."   Because BB&T properly captioned its Answer and the Crossclaim was stated within it, no grounds exist to strike the Crossclaim for failure to comply with federal pleading requirements.

In addition, the record belies the Trevitts' contention that they were not properly served: the Certificate of Service shows that BB&T perfected service by mail to the Trevitts' address on file with the Court.[14]   Accordingly, to the extent that the Trevitts request that the Court strike BB&T's Crossclaim for failure to serve, that request is **DENIED**.

Nevertheless, construing the Motion to Strike liberally, as the Court must for *pro se* filings,[15] the Court recognizes the Motion to Strike as a misguided attempt to avoid the entry of default.  As such, the Court **CONSTRUES** the remainder of the Motion as a Motion to Set Aside Default.[16]

---

counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and(7) if the court orders one, a reply to an answer.").

[13] Fed. R. Civ. P. 13(g).

[14] [Doc. 23, p. 15]; *see* Fed. R. Civ. P. 5(b)(2)(C) ("A paper is served under this rule by: . . . (C) mailing it to the person's last known address—in which event service is complete upon mailing.").

[15] *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

[16] *See Mainsail Dev., L.L.C. v. Rusco Invs., Inc.*, 8:11-CV-45-T-33AEP, 2012 WL 2979076, at *1 (M.D. Fla. July 20, 2012) (construing a motion for extension of time to comply as a motion to set aside clerk's default); *Prudential Ins. Co. of Am. v. Crouch*, CV 109-148, 2010 WL 5071392 at *3 (S.D. Ga. Dec. 7, 2010) (construing a response to motion for default as a motion to set aside the entry of default); *TS Prod., LLC v. Leadracer.com, Inc.*, 8:07-CV-686-T-24-EAJ, 2007 WL 4277535, at *1 (M.D. Fla. Dec. 3, 2007) (construing "Declarations for [the third party plaintiffs] mailing them both pro say [sic] two individual summons unlawfully served

Pursuant to Federal Rule of Civil Procedure 55, a district court may set aside an entry of default, where no default judgment has been rendered, upon a showing of good cause.[17]  "Action on a motion to set aside a default is within the discretion of the district court."[18]  In exercising its discretion, the Court remains mindful that "defaults are seen with disfavor because of the strong policy of determining cases on their merits."[19]

Rule 55's "good cause" standard has been described as a "liberal" and "mutable" standard that is not rigidly defined and varies from situation to situation.[20]  District courts may consider several factors when determining whether good cause exists, such as: (1) whether the default was culpable or willful; (2) whether the party in default has a meritorious defense to the plaintiff's claims; (3) whether the party in default acted promptly upon learning of the default; and (4) whether the non-defaulting parties would suffer any possible prejudice by the setting aside of the default.[21]  Of course, these factors are by no means "talismanic"; other appropriate factors may be

---

asking the court to strike both lawsuits from the record due to the above reasons-details enclosed" as a motion to set aside the default and a motion to quash the service of process).

[17] Fed. R. Civ. P. 55(c); *see also EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 527-28 (11th Cir. 1990) (distinguishing the standard applied in setting aside entry of default versus setting aside default judgment).

[18] *Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984).

[19] *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993).

[20] *Compania Interamericana Exp.-Imp. v. Compania Dominicana de Avacion*, 88 F.3d 948, 951 (11th Cir. 1996).

[21] *Id.*

considered.[22]  "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of good cause to set aside a default."[23]

Considering these factors in the present case, the Court finds there is good cause to set aside default.  There is no indication that the Trevitts' default on the Crossclaim was willful.  The Trevitts' Motion to Strike suggests that their failure to respond to the Crossclaim was, at most, inadvertent, because they did not see it.  Given the number of parties in this case and the complex interplay of the property and security interests at issue, such oversight by *pro se* parties is not unreasonable.  In addition, the Trevitts acted promptly upon learning of the default: they filed their Motion to Strike two weeks after the entry of default, and filed an objection to BB&T's Motion for Default Judgment a mere two days after that Motion was filed.  Furthermore, the Trevitts retained counsel shortly after BB&T moved for default judgment.  At this juncture, the Court cannot determine whether the Trevitts have a meritorious defense to the Crossclaim, but, now with the benefit of counsel, they should have the opportunity to explore any possible defenses.

Moreover, there is nothing in the record to suggest BB&T will suffer prejudice if the Court sets aside the default.  While the Court acknowledges a delay of response,

---

[22] *Id.*
[23] *Id.* (internal quotation marks and citation omitted).

7

BB&T has not explained how the lapse in time will result in the loss of pertinent evidence or cause other discovery issues.[24]  Even if prejudice could result from the delay, the Court has stayed discovery and will reset discovery deadlines to cure any potential prejudice.

Based on the foregoing, the Court finds that the Trevitts have sufficiently shown good cause to set aside the entry of default in favor of BB&T.  In light of this holding, BB&T's Motion for Default Judgment is **DENIED**.

## II.     Objection to Entry of Default in favor of the Government and the Government's Motion for Default Judgment

Similarly, the Trevitts filed an "Objection to United States of America's Application for Entry of Default" after the Clerk entered default in the Government's favor, which the Court **CONSTRUES** as Motion to Set Aside Default.  In their Objection, the Trevitts argue the Court should set aside the default for good cause because the Trevitts intended for their Counterclaims to serve as responsive pleadings.

Once again the good cause factors weigh in favor of setting aside default.  There is no indication that the Trevitts' default was willful.  On the contrary, the Trevitts filed numerous documents in response to the Amended Complaint, including Affidavits and

---

[24] *See Burrell v. Henderson*, 434 F.3d 826, 835 (6th Cir. 2006) ("Delay in adjudicating a [party's] claim does not qualify as sufficient prejudice under Rule 55. Instead, [the party] would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties.").

8

Counterclaims, as well as other motions.  Although the Court denied or dismissed many of these filings as frivolous, given their level of participation in this case, the Court cannot say that their default was intentional.[25]  In addition, the Trevitts acted promptly upon learning of the default: they filed their Objection four days after the Clerk's Entry of Default in favor of the Government, and, as mentioned above, retained counsel after the parties moved for default judgment.

Furthermore, the *pro se* Counterclaims and proposed answer submitted by the Trevitts' newly retained counsel show that the Trevitts have a potentially meritorious defense to the Government's claims.  The proposed answer in particular challenges the validity of the tax assessments and corresponding liens and asserts that the Government failed to comply with deficiency and collection procedures under 26 U.S.C. § 6212 and 26 U.S.C. §§ 6320 and 6330.  Without determining the likelihood of success on the merits, the Court finds the Counterclaims and the proposed answer provide the Court with a "hint of a suggestion" of a meritorious defense sufficient to establish good cause.[26]

---

[25] *See Cobb v. Dawson, Jr.*, 5:06CV066 HL, 2007 WL 3027399, at *4 (M.D. Ga. Oct. 15, 2007) ("While the sufficiency of Defendants' putative response was called into question, they nevertheless did make an attempt to deny the new allegations. This attempt, sufficiency notwithstanding, belies willful default and demonstrates an intention, albeit faint, to defend the case.").

[26] *See Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969). The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Finally, like BB&T, the Government fails to articulate any prejudice likely to result from setting aside default.  In fact, although the Court dismissed the Trevitts' Counterclaims for lack of subject matter jurisdiction, the Counterclaims arguably put the Government on notice that the Trevitts contest the validity of the tax assessments and liens underlying this case.[27]  Moreover, as mentioned above, the extension of discovery will alleviate any resulting prejudice from the delay.

Based on the foregoing, the Court finds that the Trevitts have sufficiently shown good cause to set aside the Entry of Default in favor of the Government.  Accordingly, the Government's Motion for Default Judgment is **DENIED**.

## III.    The Trevitts' Motion to Allow an Amended Answer and Change the Title of Pleadings

Finally, the Trevitts have filed a Motion to Allow an Amended Answer and Change the Title of Pleadings in which they seek to re-designate their filings mistakenly labeled as "Counterclaims" as "Answers and Counterclaims."  Additionally, the Trevitts seek leave to amend these filings to more succinctly respond to the allegations in the Government's Amended Complaint.  The Government objects to this request on estoppel grounds.  Specifically, the Government contends that the Trevitts expressly stated that their Affidavits and Counterclaims were not intended to be answers, and,

---

[27] *See* [Docs. 9 & 10, pp. 10-12].

10

therefore, they are now estopped from claiming that these filings constitute responsive pleadings which can now be amended.  The Court disagrees.

"Judicial estoppel is 'designed to prevent parties from making a mockery of justice by inconsistent pleadings.'"[28]   While the Court understands the parties' frustration with the incoherent nature of the Trevitts' earlier *pro se* filings, the Court cannot find that the Trevitts' earlier position regarding the title of their filings is so inconsistent with their current position in their Motion to Amend to warrant the application of estoppel.  Although the Trevitts stated they did not intend for their "Affidavits" to be titled as "Answers," it is clear to the Court that they did intend for the Affidavits and Counterclaims to constitute "responses" to the Complaint, regardless of their titles.  When analyzing *pro se* filings, a court should always look beyond the title of a document in order to properly analyze its substance.[29]   Here, although difficult to decipher, both the Affidavits and the Counterclaims seek to deny liability for and the validity of the tax assessments and corresponding liens alleged in the Amended Complaint.  As such, the Court finds that these documents are responsive pleadings, and the Trevitts are not estopped from seeking to amend those pleadings now.

---

[28] *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1182 (11th Cir. 2013) (quoting *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th Cir. 1991)).

[29] *See Fugate v. Dep't of Corr.*, 301 F.3d 1287, 1288 (11th Cir. 2002) (holding that district court properly construed plaintiff's 42 U.S.C. § 1983 complaint as a petition for writ of habeas corpus); *Spivey v. State Bd. of Pardons & Paroles*, 279 F.3d 1301, 1302 (11th Cir. 2002) (holding that although petitioner "artfully" labeled his 42 U.S.C. § 1983 claim, it was subject to the same limitations placed on second or successive habeas petitions).

11

Having so found, the Court will now determine whether the Trevitts have met the standard to allow an amendment under the Federal Rules of Civil Procedure. Here, because the Trevitts filed their request to amend two weeks after the prescribed deadline for amendments in the Scheduling Order, the Court looks to Rules 16 and 15 for guidance.[30] Rule 16 dictates that the moving party must show "good cause" for his or her failure to meet the amendment deadline.[31] If the Trevitts meet the good cause standard, the Court will then consider whether amendment would be proper under Rule 15.

The good cause standard articulated in Rule 16 "precludes modification unless the [deadline] cannot 'be met despite the diligence of the party seeking the extension.'"[32] This Court considers three factors when deciding diligence: (1) if the moving party neglected to determine facts before filing pleadings or within discovery; (2) if the subject matter of the motion to amend was readily available to the moving party; and (3) if the moving party delayed filing the motion to amend.[33]

Having considered those factors, the Court finds good cause exists to allow the Trevitts to amend their pleadings. The Court acknowledges that a moving party's *pro se*

---

[30] *See Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (holding that because the filing of a motion violates a deadline established in the scheduling order, the party "must first demonstrate good cause under Rule 16(b) before [the court] will consider whether amendment is proper under Rule 15(a)").

[31] *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

[32] *Sosa*, 113 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note).

[33] *See id.* at 1419.

status, standing alone, does not provide the requisite showing of good cause under Rule 16.[34]   Nevertheless, the Trevitts' diligence in filing responsive pleadings and briefs, attending the discovery hearing, and heeding the Court's advice by retaining counsel in this case compel a finding of good cause.   Moreover, the Trevitts did not delay in moving to amend: counsel entered a notice of appearance and filed the Motion to Allow an Amended Answer on the same day.   Therefore, the Trevitts have shown good cause to allow amendment under Rule 16.

Having found good cause under Rule 16, this Court must now determine whether Rule 15 allows the amendment.   Under Rule 15, a party seeking to amend its pleading must have either the opposing party's written consent or the court's leave.[35] When the moving party seeks leave of court, "[t]he court should freely give leave when justice so requires."[36]   Under Rule 15's liberal amendment policy, "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial."[37]   When determining whether a substantial reason exists to deny leave to amend, a district court should consider factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

---

[34] *Goolsby v. Gain Techs., Inc.,* 362 F. App'x 123, 131–32 (11th Cir. 2010) (concluding that district court did not abuse its discretion when it refused to allow *pro se* plaintiff's amendment because plaintiff failed to show good cause); *Keeler v. Fla. Dept. of Health,* 324 F. App'x 850, 857–58 (11th Cir. 2009) (affirming district court's denial of motion to amend under Rule 16's "good cause" standard where *pro se* plaintiff failed to explain why she did not seek leave to amend in the time limit prescribed in the scheduling order).
[35] Fed. R. Civ. P. 15(a)(2).
[36] *Id.*
[37] *Shipner v. E. Air Lines, Inc.,* 868 F.2d 401, 407 (11th Cir. 1989).

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[38]

Here, there is no substantial reason to deny leave to amend.  As mentioned above, there has been no showing of undue delay, bad faith, or prejudice.  On the contrary, the Counterclaims put the Government on notice that the Trevitts challenged the validity of the tax assessments and the corresponding liens.  The proposed amended answer merely translates these contentions into something that makes legal sense.  Therefore, allowing the amendment will likely aid the parties narrow the relevant issues, resulting in a more organized and speedy disposition of this case.  Accordingly, the Trevitts have satisfied Rule 15's standard for amendment.

Based on the foregoing, the Trevitts' Motion for Leave to Amend and Change the Title of Pleadings is **GRANTED.**

## CONCLUSION

In sum, the Court rules as follows: (1) The Trevitts' Motion to Strike [Doc. 46] is **GRANTED in part** and **DENIED in part**: the Trevitts' request to strike the Crossclaim is **DENIED**, but the **CONSTRUED** Motion to Set Aside Default is **GRANTED**;  (2) The Trevitts' "Objection to United States of America's Application for Entry of Default" [Doc. 41] is **CONSTRUED** as a Motion to Set Aside Default and **GRANTED**; and (3)

---

[38] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992).

14

The Government and BB&T's Motions for Default Judgment [Docs. 48 & 49] are **DENIED**. Accordingly, the Clerk of Court is directed to **VACATE** its Entries of Default in favor of BB&T and the Government [Docket Entries March 20, 2014].

Furthermore, the Trevitts' Motion to Allow an Amended Answer and Change the Title of Pleadings [Doc. 61] is **GRANTED.** The Trevitts must file their amended answer or other responsive pleading to the Government's Amended Complaint and BB&T's Crossclaim within **seven (7) days of the entry of this Order**. The Trevitts' Motions for a Hearing [Docs. 65 & 66] are **DENIED** as unnecessary.

In light of the Court's holding on these Motions, this case will proceed to discovery upon the filing of the Trevitts' amended answer. To aid this process, the parties are **DIRECTED** to resubmit an amended proposed scheduling and discovery order **within fourteen (14) days** of the filing of the Trevitts' amended answer. The Court will allow an additional six (6) months of discovery with all other deadlines adjusted accordingly.

**SO ORDERED,** this 28th day of August, 2014.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

ADP/ssh

15