**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **No. 5:13-CV-174 (CAR)** |
| **CARMEN D. TREVITT, JR.,** | : | |
| **BARBARA B. TREVITT,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff United States of America (the "Government") filed the present action to reduce to judgment the federal income tax liabilities of Carmen and Barbara Trevitt (collectively, the "Trevitts") and to foreclose federal tax liens against certain real property. The parties have settled the foreclosure claim: the property has been sold to a third party, and the net proceeds have been paid to the Government.[1] Now, remaining before the Court, are the Government's requests to reduce to judgment the income tax liabilities and penalties of Carmen Trevitt for 2002, 2004, 2005, and 2011, and the joint and several income tax liabilities of the Trevitts for 2003, 2006, and 2007.

---

[1] Based on this settlement agreement, the Court granted the parties' Joint Motion for Partial Dismissal of Claims on December 23, 2015. Count III of the Government's Amended Complaint and Branch Banking & Trust Company (BB&T)'s Cross Claim were dismissed with prejudice, and Defendants BB&T, Charles B. Haygood, Jr., Estate of Jessice B. Haygood, Jack L. Haygood, and Annice Haygood Myers, f/k/a Annice H. Trevitt (collectively, the Haygood Defendants) were dismissed from this action.

This case is currently before the Court on the Government's Motion for Summary Judgment.  The Trevitts were granted a Surreply, and the Government's Motion is now fully briefed and ripe for the Court to rule on.  As set forth below, the Motion for Summary Judgment [Doc. 83] is **GRANTED in part**, and **DENIED in part**.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[3]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[4]  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[5]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[4] *See id.* at 249-52.
[5] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[6]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[7]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[8]

## BACKGROUND

It is undisputed the Trevitts failed to timely file federal income tax returns (Forms 1040) for all tax years from 2002 to 2007.  Due to this failure, in 2007 the IRS began an investigation to determine the Trevitts' income and the amount of taxes they owed for each year.[9]  The examination lasted until early 2010, which was "due to the Trevitts nearly complete lack of cooperation, as well as the need to conduct a full examination of their many business interests," according to IRS's revenue agent, Pamela Caldwell.[10]  In May and July of 2010, the Trevitts signed separate waiver forms (Forms 870) with the IRS, agreeing to the amount of tax deficiencies stated in the Forms 870. The waivers also allowed the IRS to make an immediate assessment of the Trevitts'

---

[6] *Celotex Corp.,* 477 U.S. at 323 (internal quotation marks omitted).
[7] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.,* 477 U.S. at 324-26.
[8] *See Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991).
[9] Decl. of Pamela Caldwell, f/k/a Pamela C. Charbonneau, [Doc. 93-6] at paras. 2-4.
[10] *Id.* at para. 8.

liabilities without first sending a notice of deficiency.[11]   However, shortly before the waivers were signed, the Trevitts filed delinquent Forms 1040, claiming "married filing jointly" status for the tax years 2003, 2006, and 2007.[12]   Revenue agent Caldwell did not receive these forms until after she completed the audit and assessed the Trevitts' tax liabilities separately based on the Forms 870.[13]   The IRS rejected the delinquent Forms 1040, claiming it was unable to determine the correct amount of liabilities from the submitted forms.   Nonetheless, the IRS accepted the Trevitts' "married filing jointly" election and reassessed their income tax liabilities.   Though the election is a tax benefit and reduced the Trevitts' total amount of tax liabilities, it also caused the Trevitts to be jointly and severally liable for the newly assessed 2003, 2006, and 2007 tax deficiencies.[14]

The IRS determined the Trevitts' newly assessed tax liablities to be as follows:

## Federal Income Tax Liabilities for Carmen and Barbara Trevitt[15]

| Tax Period | Assessment Date | Assessment Amount | Type of Assessment |
|---|---|---|---|
| 2003 | 3/21/2011 | $ 227.04 | Penalty for not pre-paying tax |
| | 3/21/2011 | $ 1,979.78 | Penalty for filing late tax return |
| | 3/21/2011 | $ 8,799.00 | Additional tax assessed by examination |
| | 3/21/2011 | $ 5,254.43 | Interest charged for late payment |
| | 3/21/2011 | $ 2,199.75 | Penalty for late payment of tax |
| | 9/19/2011 | $ 12.00 | Fees and other expenses for collection |
| | | $ 18,472.00 | |
| 2006 | 5/16/2011 | $ 2,270.13 | Penalty for not pre-paying tax |

---

[11] *Id*. at para. 12.
[12] *Id*. at para. 9; Decl. of Caldwell, Trevitts' joint Forms 1040, [Docs. 93-11 to -13] at ex. 5-7.
[13] Decl. of Caldwell, [Doc. 93-6] at para. 13.
[14] *Id*. at paras. 13-16.
[15] Pl. Mtn. for Summary Judgment, [Doc. 83] at p. 7-8.

4

| | 5/16/2011 | $ 10,793.25 | Penalty for filing late tax return |
|---|---|---|---|
| | 5/16/2011 | $ 47,970.00 | Additional tax assessed by examination |
| | 5/16/2011 | $ 13,865.68 | Interest charged for late payment |
| | 5/16/2011 | $ 11,992.50 | Penalty for late payment of tax |
| | | $ 86,891.56 | |
| | | | |
| 2007 | 3/21/2011 | $ 3,783.10 | Penalty for not pre-paying tax |
| | 3/21/2011 | $ 18,702.45 | Penalty for filing late tax return |
| | 3/21/2011 | $ 83,122.00 | Additional tax assessed by examination |
| | 3/21/2011 | $ 13,459.80 | Interest charged for late payment |
| | 3/21/2011 | $ 14,961.96 | Penalty for late payment of tax |
| | | $ 134,029.31 | |

Because the Trevitts refused to agree to a "married filing jointly" election for the remaining years,[16] the IRS determined Carmen Trevitts' individual tax liabilities to be as follows:

## Federal Income Tax Liabilities for Carmen Trevitt[17]

| Tax Period | Assessment Date | Assessment Amount | Type of Assessment |
|---|---|---|---|
| 2002 | 7/11/2011 | $ 1,030.43 | Penalty for not pre-paying tax |
| | 7/11/2011 | $ 9,041.63 | Penalty for filing late tax return |
| | 7/11/2011 | $ 40,185.00 | Additional tax assessed by examination |
| | 7/11/2011 | $ 25,475.59 | Interest charged for late payment |
| | 7/11/2011 | $ 10,046.25 | Penalty for late payment of tax |
| | | $ 85,778.90 | |
| | | | |
| 2004 | 5/16/2011 | $ 1,015.29 | Penalty for not pre-paying tax |
| | 5/16/2011 | $ 7,971.30 | Penalty for filing late tax return |
| | 5/16/2011 | $ 35,428.00 | Additional tax assessed by examination |
| | 5/16/2011 | $ 18,505.07 | Interest charged for late payment |
| | 5/16/2011 | $ 8,857.00 | Penalty for late payment of tax |
| | 10/10/2011 | $ 12.00 | Fees and other expenses for collection |
| | | $ 71,788.66 | |

---

[16] See Decl. of Caldwell, [Doc. 93-6] at para. 15-16.

[17] Id.

5

| 2005 | 5/16/2011 | $ 4,212.39 | Penalty for not pre-paying tax |
| | 5/16/2011 | $ 23,628.83 | Penalty for filing late tax return |
| | 5/16/2011 | $105,017.00 | Additional tax assessed by examination |
| | 5/16/2011 | $ 43,238.08 | Interest charged for late payment |
| | 5/16/2011 | $ 26,254.25 | Penalty for late payment of tax |
| | 6/20/2011 | $ 5,000.00 | Penalty for filing frivolous return |
| | | $181,096.30 | |
| | | | |
| 2011 | 6/11/2012 | $ 2,000.00 | Miscellaneous Penalty |
| | 7/30/2012 | $ 12.00 | Fees and other expenses for collection |
| | | $ 2,012.00 | |

To help dispute the IRS's assesment, the Trevitts hired an accountant to recalculate their income and tax liabilities. The accountant determined the following amounts represent the Trevitts' correct tax liabilities:

### Trevitts' Income Tax Liabilities[18]

| Tax Period | CPA's Tax Assessment (Principal Amount) |
|---|---|
| 2004 | $ 22,115.00 |
| 2005 | $ 23,610.00 |
| 2006 | $ 27,315.00 |
| 2007 | $ 19,269.00 |
| | $ 92,309.00 |

The Government now seeks to reduce to judgment the Trevitts' income tax liabilities. The Government claims the total balance for the Trevitts' joint and several tax assessment, plus accrued statutory additions, is $276,002.83, and the total balance for Carmen Trevitt's tax assessment, plus accrued statutory additions, is $411,116.54, as

---

[18] Aff. of J. Russell Lipford, Jr., CPA, [Doc. 86-3] at para. 10. The CPA did not determine the 2002 tax liabilities because he could not find the records to determine what the IRS did. *Id.* at para. 9.

of September 30, 2015.[19]   The Government also seeks to reduce to judgment the tax penalties assessed against the Trevitts for 2005 and 2011 in the total amount of $6,465.63.[20]   The Trevitts do not contest the assessment for 2003,[21]  nor do they contest that they are responsible to the IRS for some amount of tax liabilities for the other years. Instead, the Trevitts claim the IRS's assessment for 2002 and 2004 through 2007 is invalid, and the amounts stated therein are incorrect; therefore, summary judgment is improper.

**DISCUSSION**

The Court will first discuss the parties' evidentiary requests and then turn to the validity of the IRS's tax assessment against the Trevitts.

## I.       Evidentiary Issues

### A.  *Defendants' Request to Strike Reply Brief and Affidavit*

In their Surreply, the Trevitts request the Court strike the Government's Reply brief and revenue agent Pamela Caldwell's affidavit.  The Trevitts argue this evidence should not be considered because the Reply brief is ultimately a new motion for summary judgment, and Caldwell's affidavit was not introduced as a theory in the Government's original motion.  The Court disagrees.

---

[19] Pl. Mtn. for Summary Judgment, [Doc. 83] at p. 11.

[20] *Id.*

[21] Second Aff. of J. Russell Lipford, Jr., CPA, [Doc. 102-1] at para. 15 (finding "the amount of the taxes for [2003] to be within reason").

The Government's Reply brief and Caldwell's affidavit were properly submitted to the Court in support of its rebuttal to the Trevitts' Response brief, and the Court finds no reason to exclude either.  The Trevitts fail to point to any rule or case law to support their arguments.  Moreover, there is ultimately no prejudice to the Trevitts, as the Court allowed them to file a Surreply on January 19, 2016, addressing the Government's arguments and Caldwell's affidavit.  Accordingly, the Defendants' request is **DENIED**.

**B.**  *The Government's Request to Exclude Affidavits*

In its Reply, the Government argues the Trevitts failed to support their Response in Opposition to the Motion for Summary Judgment with competent evidence, and requests the Court exclude the Trevitts' and their accountant's affidavits.  For purposes of summary judgment, the Court will assume, without deciding, the affidavits are admissible.  Even considering all the evidence, the Government is still entitled to summary judgment, as the affidavits fail to show the assessment against Carmen Trevitt is incorrect.  Thus, the Government's request is **DENIED**.

**II.     Motion for Summary Judgment**

The Government contends no dispute of material fact exists as to the validity or correctness of the IRS's tax assessment against the Trevitts, and therefore, the Government is entitled to have the Trevitts' income tax liabilities reduced to judgment. The Trevitts counter first that the tax assessment is invalid because the Government did

not provide proper notice before making the assessment, and second, that the amount of tax liabilities assessed against them is arbitrary, without foundation, and inflated. The Court must first address the procedural requirements regarding tax deficiencies before discussing the validity of the tax assessment.

**A.** *Notice of Deficiency and Waiver*

Under 26 U.S.C. § 6212, "[i]f the Secretary determines that there is a deficiency in respect of any tax imposed by [various parts of the Tax Code], he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail."[22] A notice of deficiency is generally a prerequisite before the Internal Revenue Service ("IRS") may assess or collect on a taxpayer's deficiency.[23]  The notice of deficiency provides the taxpayer 90 days to petition the Tax Court for a redetermination of the deficiency.[24] This procedural safeguard affords the taxpayer an opportunity to litigate his or her tax liabilities before the IRS makes an assessment and collection proceedings begin.[25]

However, there are certain exceptions to the notice-of-deficiency requirement.[26] For instance, under 26 U.S.C. § 6213(d), the taxpayer may voluntarily waive the right to

---

[22] 26 U.S.C. § 6212(a).

[23] *Comm'r v. Shapiro*, 424 U.S. 614, 618 (1976); *Tavano v. Comm'r*, 986 F.2d 1389, 1390 (11th Cir.1993).

[24] 26 U.S.C. § 6213.

[25] *See Shapiro*, 424 U.S. at 616-17; *Bourekis v. Comm'r*, 110 T.C. 20, 27 (1998); *see also Singleton v. United States*, 128 F.3d 833, 839 (4th Cir. 1997) ("The requirement that a notice of deficiency be issued to the taxpayer is not a mere technicality. This notice serves as a jurisdictional prerequisite for a taxpayer to challenge an assessment in Tax Court.").

[26] *See* 26 U.S.C. §§ 6213(b), 6213(d).

a notice of deficiency and the right to appear before the Tax Court.[27]  "If a taxpayer files a waiver, the IRS does not have to wait before initiating collection, and the taxpayer does not have to pay the interest that would otherwise accrue during the waiting period."[28]  The IRS has promulgated Form 870 to implement this waiver.  In this case, the Government argues it was not required to send notice because the Trevitts signed Forms 870 waiving their right to a notice of deficiency.  However, the Trevitts claim the 2006 and 2007 assessment is invalid because the IRS did not issue the notice of deficiency.[29]  The Court agrees.

On May 18, 2010, Barbara Trevitt signed a Form 870, waiving her right to a notice of deficiency.[30]  The Form 870 listed each of Barbara's deficiencies for the tax years 2002 to 2007, totaling $7,872.00.[31]  On July 14, 2010, Carmen Trevitt signed a Form 870 for 2002 to 2007, which listed his total deficiencies as $348,657.00.  Both Forms 870 state:

> I consent to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalities) shown above, plus any interest provided by law. I understand that by signing this waiver, I will not be able to contest those years in the United States Tax Court, *unless additional deficiencies are determined for those years*.[32]

---

[27] *Id.* § 6213(d).

[28] *Ulrich v. Comm'r*, 585 F.3d 1235, 1237 (9th Cir. 2009) (citing 26 U.S.C. § 6601(c); *United States v. Price*, 361 U.S. 304, 307-09 (1960)).

[29] *See* Defs. Surreply, [Doc. 102] at para. 9 (the Trevitts only make this argument for 2006 and 2007 tax liabilities, and did not dispute the 2003 liabilities).

[30] Decl. of Caldwell, Barbara Trevitt's Form 870, [Doc. 93-9] at ex. 3.

[31] *Id.*

[32] Decl. of Caldwell, Carmen Trevitt's Form 870, [Doc. 93-10] at ex. 4 (emphasis added).

Shortly after the assessing their taxes, the IRS revenue agent received the delinquent Forms 1040 the Trevitts filed just before signing the waivers.  Though the IRS rejected the Forms 1040, it accepted the Trevitts' "married filing jointly" election, making them jointly and severally liable for their tax liabilities.

The IRS agent adjusted the Trevitts' tax liabilities based on their election and sent both Barbara and Carmen new Forms 870, but the Trevitts refused to sign the forms.[33] The IRS "concluded that it could only grant married filing jointly filing status and the tax benefits associated with that status with respect to the Forms 1040 the Trevitts filed for tax years 2003, 2006 and 2007."[34]  The IRS agent relied on the previously executed Forms 870 as valid waivers and assessed the Trevitts' revised joint tax liabilities for those years.[35]  The Government contends the IRS followed proper procedure as the Internal Revenue Manual states a signature is not required on a new report or waiver when the report or waiver is corrected in the taxpayer's favor.[36]  Because the IRS provided the Trevitts with a tax benefit, the Government argues the reassessment was in the taxpayers' favor and a new waiver was not required.  The Court disagrees.

---

[33] Decl. of Caldwell, [Doc. 93-6] at paras. 12-16.

[34] *Id*. at para. 16. Again, the Court notes the Trevitts do not dispute the 2003 assessment, and the amount did not change based on the marriage filing jointly election. Second Aff. of Lipford, [Doc. 102-1] at para. 15.  Thus, the Court will not address the 2003 assessment here.

[35] Decl. of Caldwell, [Doc. 93-6] at paras. 16-18.

[36] *Id*. at para. 18 (emphasis added).

"While a taxpayer may consent and waive his rights to a notice of deficiency, the waiver applies only to the amount stated therein.  The IRS may make additional assessments against a taxpayer but must either provide notices of deficiency to the taxpayer or obtain a waiver of notice prior to making the additional assessments."[37] Here, the Trevitts only waived their right to a notice of deficiency with regard to the amounts stated in the signed Forms 870.  The reassessment substantially increased Barbara Trevitt's tax liabilities, requiring the IRS to send a notice of deficiency or obtain new waiver before making an additional assessment based on the Trevitts' joint filing status.[38]  The IRS could not rely on a past waiver to make an additional assessment.[39] Because the IRS did not send a notice of deficiency and did not have a waiver, the Court finds the joint assessment for 2006 and 2007 invalid.[40]

---

[37] *Grizzetti v. United States*, No. 89-2269, 89-1885, 1990 U.S. Dist. LEXIS 4614, at *2 (D. N.J. March 29, 1990); *see also Moore v. Cleveland Ry. Co.*, 108 F.2d 656 (6th Cir. 1940) (finding where the taxpayer did not execute a new form of waiver the IRS had to send notice of deficiency and wait 60 days, the statutorily provided time, before making an assessment); *Pork v. Goltzbach*, No. 3064, 1961 U.S. Dist. LEXIS 5509, at *3-6 (E.D. Va. April 14, 1961) ("The Form 870 … is void and of no effect, as [the form] had been altered by the Internal Revenue Service without permission of plaintiff.").

[38] *See, e.g., Canada Dry Bottling Co. of Fla., Inc. v. Fahs*, 109 F.Supp. 187, 190 (S.D. Fla. 1952) (The Tax Commissioner sent a notice of deficiency after assessing additional deficiencies, even though Plaintiff already signed a waiver); *see also Singleton*, 128 F.3d at 839 ("[T]he Court holds that the IRS was required to issue a notice of deficiency before making its supplement assessment …. In the absence of this vital procedural step, the IRS assessment was invalid."); *Snyder v. I.R.S.*, 337 B.R. 542, 547-48 (Bankr. D. Md. 2005); *Manko v. Comm'r*, 126 T.C. 195 (2006).

[39] *See Grizzetti*, No. 89-2269, 89-1885, 1990 U.S. Dist. LEXIS 4614, at *2.

[40] *E.g., Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063 (3rd Cir. 1991) ("An assessment of taxes that is not preceded by the statutorily required notice of deficiency or a validly executed and accepted waiver of notice of deficiency is illegal."); *United States v. Charboneau*, No. 504CV442OC10GRJ, 2005 WL 2346947, at *4-5 (M.D. Fla. Sept. 26, 2005) (finding the tax assessment invalid where there was no proof the IRS sent a notice of deficiency and no waiver was executed); *Marlow v. Comm'r*, 99 T.C.M. (CCH) 1462

Accordingly, the Government's Motion for Summary Judgment is **DENIED** as to the joint and several tax liabilities for 2006 and 2007.

## B. *Assessment of Tax Liabilities*

The Court will now address Carmen Trevitt's 2002, 2004, and 2005 tax liabilities, as waivers were properly executed for those years before the IRS made an assessment.[41] The Government claims Carmen is liable for federal income tax, penalties, and interest in the amount of $411,116.65.  However, Carmen claims the IRS miscalculated his liabilities, and a genuine issue of fact exists as to the correct amount he owes.  As stated earlier, even considering all the evidence as admissible, Carmen cannot show the assessment is arbitrary or without foundation.  Further, Carmen fails to present substantiating evidence to support entitlement to any of the deductions claimed, and without more the Court cannot find the IRS's assessment is incorrect.

"In reducing an assessment to judgment, the Government must first prove that the assessment was properly made."[42]  "The Government's submission of a Form 4340

---

(2010) ("[W]e make the affirmative finding that the assessments of the taxes without first issuing notices of deficiency were invalid because petitioners never waived the restrictions on the assessments.").

[41] *See* Decl. of Caldwell, Carmen Trevitt's Form 870, [Doc. 93-10] at ex. 4; *see also* Defs. Surreply, [Doc. 102] at para. 9 (The Trevitts admit they executed waivers for "some amounts" of tax liabilities).  A waiver was properly executed for Barbara Trevitt for those years as well; however, the Government only seeks to reduce to judgment Carmen Trevitt's tax liabilities for 2002, 2004, and 2005.

[42] *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006) (citing *Palmer v. United States*, 116 F.3d 1309, 1312 (9th Cir. 1997)); *see also United States v. Chambers*, No. 3:09-cv-961-J-34JRK, 2014 WL 2136041, at *5 (M.D. Fla. May 22, 2014) ("A tax assessment made by the IRS constitutes a determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes, and such a determination is entitled to a legal presumption of correctness." (quoting *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002))).

establishes such a presumption."[43]   Once the form is provided, the burden shifts to the

taxpayer to prove the assessment is erroneous.[44]   In order to prevail, the taxpayer must

show, by a preponderance of the evidence, the IRS's calculations are arbitrary and

without foundation.[45]   Here, the Government has presented certified copies of the IRS

Forms 4340 Certificates of Assessment (Forms 4340) for each tax year, as well as

affidavits from IRS agents verifying the calculations in the assessment.[46] The assessment

is therefore entitled to a presumption of correctness, and the burden shifts to Carmen to

show the assessment is incorrect.

First, Carmen argues he was entitled to depreciation deductions for business

equipment ranging from $35,088.00 in 2004 to $33,747.00 in 2007, as well as a deduction

of $39,020.00 for selling a partnership interest.[47]   Second, Carmen argues the IRS

mischaracterized the following funds as taxable income instead of deductions: an

insurance loss in 2004 on a building destroyed by fire, amounting to $79,788.00, and

reported income of $211,329.03 in 2005, which the IRS ultimately found was reported on

---

[43] *White*, 466 F.3d 1241, 1248 (11th Cir. 2006); *see also United States v. Chila*, 871F.2d 1015, 1015 (11th Cir. 1989).

[44] *White*, 466 F.3d at 1248.

[45] *Bones v. Comm'r*, 324 F.3d 1289, 1293 (11th Cir. 2003); *Olster v. Comm'r*, 751 F.2d 1168, 1174 (11th Cir. 1985); *see also Amey v. Monge, Inc. v. Comm'r*, 808 F.2d 758, 761 (11th Cir. 1987) (In unreported income cases, the situation where the burden shifts back to the Commissioner "is rare and only occurs where the Commissioner has introduced no substantive evidence, and the evidence shows that the claimed tax deficiency arising from unreported income was derived by the government from unreliable evidence.")

[46] Decl. of Revenue Officer Connie Bailey, Forms 4340, [Docs. 83-3 to -9] at exs. 1-6; Decl. of Baily, [Doc. 83-2] at para. 6-8; Decl. of Caldwell, [Doc. 93-6] at para. 2-3.

[47] Second Aff. of Lipford, [Doc. 102-1] at para. 12.

an invalid form.[48]  Carmen claims the IRS's failure to account for these deductions and mischaracterization of receipts of funds caused his tax liabilities to be seriously inflated.[49]

To support his deduction claims and overcome the presumption of correctness, Carmen presents affidavits from J. Russell Lipford, Jr., the accountant hired to recalculate the Trevitt's tax liabilities for 2003 to 2007.[50]  Using documents provided by the IRS and the Trevitts, Lipford determined the IRS's assessment is overstated by 294 percent or a cumulative total of $179,228.00.[51]  However, there are no original records, receipts, or documentation of the Trevitts' income and expenses presented.  Lipford simply states he "determined the liabilities for the Trevitt's [sic], starting with IRS computations and making numerous adjustments to arrive at a correct tax liability."[52] The only evidence offered are the Trevitts' affidavits, the Trevitts' Forms 1040, depreciation schedules, pictures of the Trevitts' business equipment, vehicle registration

---

[48] Aff. of Lipford, [Doc. 86-3] at para. 11.

[49] *Id.* at paras. 10-14.

[50] Second Aff. of Lipford, [Doc. 102-1] at para. 9. Lipford claims he could not find the IRS's 2002 report and, thus, could not recalculate the Trevitts taxes the same way he did the other years. Aff. of Lipford, [Doc. 86-3] at para. 14. Lipford suggests taking an average of the other tax years to determine the 2002 liabilities.  However, the IRS must assess each year independently and cannot use the average of other tax years. *See Wolfington v. Comm'r*, 107 T.C.M. (CCH) 1235 (2014) (citing *Auto Club of Mich. v. Comm'r*, 353 U.S. 180 (1957); *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948)).  Moreover, there is a Form 4340 for 2002 and Carmen Trevitt cannot overcome the presumption of correctness based on this argument.

[51] Aff. of Lipford, [Doc. 86-3] at para. 10.

[52] *Id.* at para. 9.

cards, and an excel sheet of the Trevitts' recalculated tax liabilities.[53]   Though Lipford's affidavits state the IRS failed to account for deductions and mischaracterized funds, it seems that he "simply relied upon records supplied by [the Trevitts] … [and provided] no showing as to the accuracy or completeness of those records."[54]   The excel sheet Lipford created stating the Trevitts' recalculated tax liabilities is merely a conclusory chart with no evidence to support it.

A taxpayer cannot overcome the presumption of correctness "by submitting tax returns, uncorroborated oral testimony, or self-serving statements."[55]   "Indeed, the 1040 Forms prepared by the taxpayer do not rebut the presumptively correct tax assessments because they are hearsay documents."[56]   Ultimately, "a taxpayer who fails to keep records of [his] income assume[s] the hazard that [he] may be called upon to pay taxes based upon an income which cannot be determined to a certainty."[57]   Carmen failed to keep proper business records and receipts or file tax returns.   He cannot now rely on only self-serving statements and Forms 1040 to show the assessment for 2002, 2004, and

---

[53] *See* Second Aff. of Lipford, Forms 1040, [Docs. 102-3 to -5] at exs. B-D.

[54] *Christensen v. Comm'r*, 43 T.C.M. (CCH) 1270 (1982) (finding petitioners could not rely upon newly-prepared income tax returns prepared by their accountant to overcome the presumption when the accountant simply relied upon records supplied by petitioners and provided no showing as to the accuracy or completeness of those records).

[55] *Id.* (citing *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985)).

[56] *Id.* (citing *Buaiz v. United States*, 521 F.Supp.3d 93, 97 (D. D.C. 2007)).

[57] *Chambers*, No. 3:09-cv-961-J-34JRK, 2014 WL 2136041, at *10 (quoting *Olster*, 751 F.2d at 1174-75) (internal quotation marks omitted).

2005 is arbitrary and without foundation.[58]  Under these circumstances, the Court finds the evidence presented is not enough to overcome the Government's presumption of correctness.[59]

Moreover, to receive deductions "the taxpayer must come forward with evidence to support his entitlement to the deduction and the amount of that entitlement."[60]  "[A]n income tax deduction is a matter of legislative grace and … the burden of clearly showing the right to the deduction is on the taxpayer."[61]  Although Carmen refused to file income taxes and therefore did not claim any deductions, he now attempts to show

---

[58] *See United States v. Barnes*, 883 F.Supp.2d 1156, 1165 (M.D. Fla. 2011), *aff'd in part, vacated in part on other grounds, by* 509 F. App'x 837 (11th Cir. 2012) ("The 'evidence' [presented] is conclusory, unsubstantiated, based upon hearsay, and lacking in specificity, and thus cannot be considered as competent evidence creating a genuine issue of material fact so as to preclude entry of summary judgment in favor of the Plaintiff."); *see also id.*

[59] *See e.g., Mays*, 763 F.2d at 1295-97 (taxpayer's computer printout summarizing business expenses and net worth failed to overcome the presumption of correctness where these self-serving statements did not refer to any original records and no documentation or other evidence was presented); *United States v. Copeland*, No. 07-80965-CIV, 2009 WL 6042911, at *2 (S.D. Fla. Dec. 8, 2009) (the CPA's completed tax forms were not enough for Defendant to overcome the presumption of correctness where Defendant does not submit any records to substantiate the forms).

[60] *Amey & Monge, Inc.*, 808 F.2d at 761; *see also Gatlin v. Comm'r*, 754 F.2d 921, 923-24 (11th Cir. 1985) ("Because the taxpayer is privy to the facts that substantiate a deduction, he must bear the burden of proving his right to, and amount of, a claimed deduction."); *Chambers*, No. 3:09-cv-961-J-34JRK, 2014 WL 2136041, at *13 ("A taxpayer may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on trade or business if the taxpayer maintains sufficient records to substantiate the expenses." (quoting *Basalyk v. Comm'r*, 97 T.C.M. (CCH) 1516 (2009)).

[61] *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (quoting *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943)) (internal quotation marks omitted); *see also Longino v. Comm'r*, 593 F. App'x 965, 968 (11th Cir. 2014) (per curiam) ("But to shift the burden of proof to the Service, [petitioner] had to present 'credible evidence' that he was entitled to a deduction, … comply with the requirements to 'substantiate any item,' … and maintain 'all required records.'" (internal citations omitted)).

the IRS's assessment is incorrect for failing to account for specific deductions.[62]   For instance, Carmen claims he is entitled to depreciation deductions on business equipment, presenting depreciation schedules, pictures of work equipment, and vehicle registration records to support the deductions.   It is unclear what records were used to create the depreciation schedules, as there is no record or receipt of what the Trevitts paid for the business equipment, who they bought it from, or how the current market value was determined.   When a taxpayer claims a depreciation deduction he must present evidence of the value of property to determine a basis for depreciation.[63]   Pictures of the business equipment and the vehicle registration records are not evidence of the value of the equipment, its useful life, or its salvage value.[64]   Ultimately, there is no evidence to determine a basis for depreciation or support the depreciation schedules submitted.

Further, Carmen alleges he is entitled to a deduction for selling a partnership interest, but again, he presents no official records regarding the partnership interest

---

[62] The IRS revenue agent explained she relied on third party payer information and bank records to determine the Trevitts' tax liabilities and applied the standard deductions offered to all taxpayers because she was without the benefit of filed tax returns or any affirmatively claimed tax deductions. Decl. of Caldwell, [Doc. 93-6] at paras. 5-6.

[63] *See Gilmartin v. Comm'r*, 32 T.C.M. (CCH) 1158 (1973) (finding petitioner was not entitled to an allowance for depreciation where he was unable to establish the basis of the property).

[64] *Id.* ("In the computation for any allowance for depreciation, the essential elements of basis, useful life, salvage value, and amount of depreciation previously claimed must be known."); *see also Bolin v. Comm'r*, 26 T.C.M. (CCH) 62 (1967) ("Petitioners offered very little evidence with respect to the basis for depreciation of the [property] involved or their useful lives in the business, and the presumptive correctness of respondent's determinations thereof must stand.").

sold to support his claims.  The Government also points out that Carmen did not present any evidence regarding the building destroyed by fire, and "the basis in the building to which the casualty loss is attributed."[65]  Under Section 1.165(a) of the Code of Federal Regulations, the Trevitts are permitted to claim a deduction for "any loss actually sustained during the taxable year and not made good by insurance or some other form of compensation."[66]  "The amount of a casualty loss sustained is measured by the difference between the fair market value of the loss property immediately before and after each casualty, limited to the adjusted basis of the loss property."[67]  Where a taxpayer receives an insurance reimbursement in excess of their sustained loss it is recognized as a casualty gain and is taxable as income.[68]  Here, Carmen did not provide clear records regarding the adjusted basis or the insurance received, and is therefore unable to show the IRS's treatment of the casualty loss on the building was incorrect.

Lastly, Carmen's argument regarding the mischaracterized income funds in 2005 fails as well.  Carmen contends the income was stated on a tax form that was ultimately rejected by the IRS and thus should not have been characterized as income funds. However, the $211,329.03 income was reported on a delinquent Form 1040 Carmen

---

[65] Pl.'s Reply, [Doc. 93] at p. 15.

[66] 26 C.F.R. § 1.165-1(a).

[67] *Pickering v. Comm'r*, 37 T.C.M (CCH) 1765 (1978) (citing 26 C.F.R. §§ 1.165-1 to -7(b)(1))).

[68] *See Oliver v. Comm'r*, 73 T.C.M. (CCH) 2035 (1997) (finding where the Commissioner determined in the notice of deficiency the insurance reimbursement exceed petitioners' sustained loss and resulted in a casualty gain, the petitioner was unable to prove otherwise when he offered no evidence to show otherwise).

submitted himself.[69]   Therefore, the revenue agent was entitled to use it as an admission of tax liabilities and consider it in her assessment.[70]   Carmen does not provide any support for his contention that the IRS cannot rely on invalid tax forms, nor does he provide any evidence to show the income $211,329.03 should not have been considered as income.   Thus, this argument fails as well.

As shown above, Carmen Trevitt has failed to present any admissible evidence to show the IRS's assessment is arbitrary or without foundation.   Accordingly, as there is no genuine issue of material fact regarding the validity of Carmen Trevitt's tax assessment, Plaintiff's Motion for Summary Judgment is **GRANTED** as to the tax liabilities for 2002, 2004, and 2005.

## III.    Penalties

The Trevitts challenge the tax penalties and interest additions for 2002 to 2007, and a 2005 tax penalty against Carmen Trevitt for filing a frivolous tax return.   The Trevitts argue the Government failed to meet its burden by not providing a detailed explanation of all the penalties and interest additions assessed against the Trevitts, thus making summary judgment improper.   The Government contends the Trevitts face the same evidentiary problems in challenging the tax penalties as they do for the assessment discussed above.   The Court agrees.

---

[69] Decl. of Caldwell, Form 1040, [Doc. 93-17] at ex. 11.

[70] *See Blodgett v. Comm'r*, 394 F.3d 1030, 1040 (8th Cir. 2005) ("A tax return is generally considered inadmissible hearsay with the exception that the return may constitute an admission by the taxpayer.").

Under 26 U.S.C. § 7491(c), "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by [the tax code]."[71]   Here, the Government provided support for all of the tax penalties and interest assessed against the Trevitts by presenting two revenue officers' declarations and the certified Forms 4340.[72]   Each Form 4340 shows the Trevitts' assessed penalties for failing to pre-pay taxes, filing delinquent tax returns, and making late payments, as well as the interest charged for late payments.[73]   Based on these forms, the Government has clearly met its burden of production regarding the tax penalties and interest assessed for each year.[74]

As for the 2005 penalty against Carmen Trevitt for filing a frivolous tax return, the Government has also met its burden of production by providing the revenue officers' declarations explaining the penalty and the certified Forms 4340.[75]   Further, the IRS provided the Trevitts an opportunity to withdraw or correct the 2005 frivolous tax return before assessing the penalty.   Carmen Trevitt filed a Form 1040 for 2005, stating he did not owe any taxes, but reported $211,329.03 in original issue discount (OID)

---

[71] 26 U.S.C. § 7491(c).

[72] Decl. of Bailey, [Doc. 83-2] at para. 7.

[73] *See* Decl. of Bailey, Forms 4340, [Docs. 83-3 to -9] at exs. 1-9.

[74] *See e.g.*, *United States v. Sadler*, No. 13–7207, 2015 WL 4610950, at *3 (E.D. Penn. Aug. 3, 2015) (finding the Forms 4340 met the Government's burden of production (citing *Hughes v. United States*, 953 F.2d 531, 539-40 (9th Cir.1992)); *McLaine v. Comm'r*, 138 T.C. 228, 245-46 (2012) (holding that a Form 4340 "satisfie[s] [the Commissioner's] burden of production under section 7491(c)" with respect to additions to tax for failure to timely pay)).

[75] Decl. of Bailey, [Doc. 83-2] at para. 6-7; Decl. of Caldwell, [Doc. 93-6] at paras. 21-23; Decl. of Caldwell, Attached Exhibits [Docs. 93-16 to -18], exs. 9-12.

income.  Carmen claimed the OID income had already been withheld and paid to the IRS.  Indeed, Carmen filed the Form 1040, requesting a complete refund on the OID income.  However, no such tax was ever paid to the IRS.[76]  Thus, the IRS regarded this as a frivolous tax return and assessed a $5,000 penalty against Carmen Trevitt pursuant to 26 U.S.C. § 6702.[77]  In 2010, the IRS provided the Trevitts an opportunity to correct or withdraw their frivolous return, which they failed to do.  Based on the evidence provided, the Court finds the Government has met its burden of production.[78]

As the Government only bears the burden of production,[79]  the Trevitts must then show the assessed penalties are incorrect.[80]  As previously stated, the Trevitts have failed to provide sufficient evidence to persuade the Court the IRS's determinations are incorrect.  Thus, the Trevitts' challenge to these tax penalties and interest additions is unavailing.

---

[76] Decl. of Caldwell, [Doc. 93-6] at paras. 21-23.

[77] I.R.C. § 6702 (providing for a civil penalty of $5,000 if a person: "files what purports to be a return of a tax imposed by this title but which–(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or (B) contains information that on its face indicates that the self-assessment is substantially incorrect, and (2) the conduct referred to in paragraph (1)--(A) is based on a position which the Secretary has identified as frivolous under subsection (c), or (B) reflects a desire to delay or impede the administration of Federal tax laws.").  The IRS determined the Form 1040 was frivolous for seeking over a $200,000 refund based on taxes Carmen Trevitt falsely claimed he paid.

[78] There is also 2011 miscellaneous penalty for highway diesel fuel use against Carmen Trevitt, which the Trevitts do not seem to dispute.  Nonetheless, the Governemnt has also produced a Form 4340 and a revenue agent's declaration regarding the penalty.  Therefore, the Government has met its burden of production as to this penalty as well.

[79] *See Longino*, 593 F. App'x at 970.

[80] *See Sadler*, No. 13–7207, 2015 WL 4610950, at *4.

## CONCLUSION

Accordingly, the Government's Motion for Summary Judgment [Doc. 83] is **GRANTED in part**, and **DENIED in part** as follows:

1. With respect to the Government's claims for unpaid taxes, interest, and penalties against the Trevitts for 2006 and 2007, the Motion is **DENIED** because the tax assessment for 2006 and 2007 is invalid;

2. With respect to the Government's claims for unpaid taxes, interest, and penalties against the Trevitts for 2003, the Motion is **GRANTED**; and

3. The Government's Motion against Carmen Trevitt is **GRANTED** for federal income tax, penalties, and interest for the taxable periods of 2002, 2004, and 2005, plus a civil penalty for 2005 and a miscellaneous penalty for the taxable period ending August 31, 2011, plus fees, interest, and statutory additions provided by law.

Because the Court finds the 2006 and 2007 assessment invalid, no genuine issue of material fact remains in this Case.  Therefore, the Court **DIRECTS** the **Clerk of Court** to enter **JUDGMENT** in favor of the Government for:

a. $18,472.00, plus fees, interest, and statutory additions provided by law against the Trevitts for the 2003 assessment; and

b.  $417,582.28, plus fees, interest, and statutory additions provided by law against Carmen Trevitt for the 2002, 2004, and 2005 assessment, and the 2005 and 2011 tax penalties.[81]

**SO ORDERED,** this 15th day of July, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

CML/ssh

---

[81] $411,116.65 for the taxable periods of 2002, 2004, and 2005; $4,244.13 for the civil penalty in 2005; and $2,221.50 for the miscellaneous penalty in 2011.